UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

SHAWN HUSS, a single man, and
others similarly situated,

        Plaintiff,

        v.

SPOKANE COUNTY, a municipal
corporation,

        Defendant,

        v.

ATTORNEY GENERAL FOR THE STATE OF
WASHINGTON,

        Intervenor Defendant.

No. CV-05-180-FVS

ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT

**BEFORE THE COURT** is Plaintiff's Motion for Partial Summary
Judgment (Ct. Rec. 27) and Defendant's Motion for Failure to State a
Claim; Alternatively for Summary Judgment (Ct. Rec. 36). Plaintiff is
represented by Breean Beggs. Defendant Spokane County is represented
by James Kaufman and Frank Conklin. Timothy Ford represents the
Washington State Attorney General.

I.   **BACKGROUND**

    Plaintiff, Shawn Huss, filed suit individually and on behalf of a
class of others similarly situated, under 42 U.S.C. §§ 1983 and 1988,

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT -
1

seeking both monetary damages and declaratory and injunctive relief. Plaintiff alleges the official booking fee policy of the Spokane County Jail (the Jail) and RCW 70.48.390 are facially unconstitutional by depriving persons of their property without due process of law in violation of the Fourteenth Amendment of the United States Constitution.

In May 1999, the Washington legislature passed RCW 70.48.390, authorizing city, county, and regional jails to take a $10.00 booking fee from the person of each individual booked into jail. In May 2003, the Washington legislature amended RCW 70.48.390, allowing jails to require each person who is booked into jail to pay a fee based on the jail's actual booking costs or one hundred dollars, whichever is less. The "fee is payable immediately from any money then possessed by the person being booked" into jail. RCW 70.48.390.

In accordance with RCW 70.48.390, on or about February 24, 2004, the Spokane County Board of Commissioners passed Resolution 04-0160, which authorized the Jail to develop and implement a procedure to collect a fee from persons booked into jail. On May 5, 2004, pursuant to Resolution 04-0160, the Jail adopted an official policy[1] ("Policy") authorizing the collection of a booking fee. Under this Policy, federal inmates are charged the federal daily rate while non-federal inmates are charged the actual jail booking costs--$89.12. Pursuant to the statute, the Policy allows the fees to be taken directly from any funds found on the person at the time of booking. If the person

---

[1] Policy 2.00.00 Booking

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 2

does not have adequate funds to cover the booking fee at the time, a charge is assessed to the person's account.  The Policy does not provide a mechanism for determining whether the money taken from the person is exempt public benefits or the property of a third person.  The Policy does not provide for a pre-deprivation hearing or any other opportunity for persons to contest the taking of their money.  Instead, the Jail adopted a separate reimbursement policy.  Under this reimbursement policy, the individual is required to prove his charges were dropped or that he was acquitted, and then, upon investigation by the Spokane County Jail Staff, the inmate may[2] be reimbursed for his intake fee.

In the present case, Mr. Huss was arrested based on a domestic violence complaint and booked into the Spokane County Jail on October 31, 2004.  Mr. Huss' wallet was inventoried as personal property that would be returned upon his release, but the Jail took all of the money from Mr. Huss' wallet ($39.30) as payment on the booking fee ($89.12).  The Spokane County jail did not inform Mr. Huss he was being charged a booking fee, that there was a reimbursement policy in place, or that the money was required to be returned if his charges were dropped or he was acquitted.  Mr. Huss was released from jail the next day after all of the charges were dropped.  Upon his release, his money was not returned and he did not receive a copy of the Jail's reimbursement

---

[2] The "Spokane County Jail Claim Form For Reimbursement of Intake Fees" specifically states that the Jail Staff will investigate all claims and the decision to honor the claim is based on that investigation.

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 3

policy.  The Spokane County Jail eventually returned Mr. Huss' money on February 23, 2005, approximately four months after the charges against him were dropped, and after Mr. Huss' lawyer sent a letter to Spokane County stating the Jail's booking fee policy was unconstitutional.

In January 2005, the Jail modified its forms and procedures related to the collection of booking fees.  It is now a requirement that each person booked into jail receive paperwork outlining methods for obtaining reimbursement.  Further, persons who are released and not charged within 72 hours, automatically, without request, have their booking fees returned if paid in part or in full.  The Jail also automatically voids any *unpaid* booking fee for all inmates who are found not-guilty, acquitted, or have their charge dismissed.

Plaintiff moves for partial summary judgment, requesting a ruling that the Spokane County Jail's booking fee policy and RCW 70.48.390 are facially unconstitutional in that they permit Spokane County to deprive persons of their property without due process of law in violation of the Fourteenth Amendment.  Defendant filed a cross-motion for summary judgment.[3]  Pursuant to 28 U.S.C. § 2403(b), the Court

_____

[3] Defendant's motion, which is captioned "Motion to Dismiss for Failure to State a Claim, Alternatively for Summary Judgment" argues Plaintiff's Complaint should be dismissed in its entirety because (1) Plaintiff cannot claim punitive damages from a subdivision of a state; (2) Plaintiff cannot assert a takings claim because he has not exhausted his administrative remedies; (3) Plaintiff's rights under the due process clause have not been violated; and (4) Plaintiff cannot prove Spokane County Resolution 04-0169 and RCW 70.48.390 are unconstitutional on their face.  After Defendant filed its motion to dismiss, the Court permitted Plaintiff to amend his Complaint to remove the

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 4

informed the Attorney General of the State of Washington that the constitutionality of a state statue was being challenged and permitted the Attorney General an opportunity to intervene.  The Attorney General submitted briefing in opposition to Plaintiff's motion for partial summary judgment and Plaintiff was allowed to reply.

## II.  DISCUSSION

"A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [statute] would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987); *see also In re Detention of Turay*, 139 Wash.2d 379, 417 n. 27, 986 P.2d 790 (1999) (stating that a facial challenge must be rejected unless there exists no set of circumstances in which the statute can be applied constitutionally).  Thus, to succeed on his facial challenge, Plaintiff must demonstrate there are no circumstances under which the Jail's booking fee policy can be applied constitutionally and it is not possible for any jail to constitutionally implement RCW 70.48.390, which provides;

> A governing unit **may require** that each person who is booked at a city, county, or regional jail pay a fee based on the jail's actual booking costs or one hundred dollars, whichever is less, to the sheriff's department of the county or police chief of the city in which the jail is located.

mention of punitive damages and all Fifth Amendment claims. Thus, the only remaining issues in Defendant's motion are also the subject of Plaintiff's motion for partial summary judgment. Accordingly, the Court views Defendant's motion as a cross-motion for summary judgment.

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 5

The **fee is payable immediately from any money then possessed by the person being booked,** or any money deposited with the sheriff's department or city jail administration on the person's behalf.  If the person has no funds at the time of booking or during the period of incarceration, the sheriff or police chief may notify the court in the county or city where the charges related to the booking are pending, and may request the assessment of the fee.  Unless the person is held on other criminal matters, if the person is not charged, is acquitted, or if all charges are dismissed, the sheriff or police chief shall return the fee to the person at the last known address listed in the booking records.

WASH. REV. CODE ANN. § 70.48.390 (2002) (emphasis added).

### A.    *State's Argument*

The State argues RCW 70.48.390 is not facially unconstitutional because it is not mandatory and does not expressly preclude the application of a pre-deprivation or post-deprivation hearing to satisfy due process.  Although the statute is not mandatory, the State's argument ignores the express language in the statute stating that if a booking fee policy is enacted, the booking fee is "payable immediately from any money then possessed by the person being booked" into jail.  RCW 70.48.390.  The State fails to show how a pre-deprivation hearing could be held when the statute requires immediate payment.

### B.    *Defendant's Arguments*

Defendant contends Plaintiff must first exhaust his administrative remedies before bringing this due process claim under 28 U.S.C. § 1983.  Defendant relies on *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).  Defendant's reliance on these cases is misplaced.

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 6

In *Parratt*, a state prisoner brought a Section 1983 action when prison officials negligently lost the prisoner's hobby kit he had ordered by mail.  The prisoner did not dispute that under state law a tort claim procedure was available by which he could recover the value of his hobby kit.  The Supreme Court ruled that the tort remedy was all the process the prisoner was due because the loss of his property was the result of a random and unauthorized act.  The *Parratt* Court reasoned:

> It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place.  The loss of property, although attributable to the State as action under "color of law," is in almost all cases beyond the control of the State.  Indeed, in most cases it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation.

*Parratt*, 450 U.S. at 451, 101 S.Ct. at 1916.  In *Hudson*, the Supreme Court extended the reasoning in *Parratt* to unauthorized, intentional deprivations of property by state employees.  *Zinermon v. Burch*, 494 U.S. 113, 128, 110 S.Ct. 975, 985, 108 L.Ed.2d 100 (1990).

Neither *Parratt* nor *Hudson* are controlling of the issue before the Court.  In *Parratt* and *Hudson*, the loss was the result of unauthorized acts by state employees.  Here, in contrast, the loss complained of by Plaintiff is the result of a policy established pursuant to statute.  *Parratt* was not designed to reach such a situation.  *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-36, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982).  *Parratt* and *Hudson* did not hold that post-deprivation remedies are sufficient to satisfy due process if the deprivation of property is caused by conduct pursuant to an established policy.  Rather, "*Parratt* and *Hudson* represent a

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 7

special case of the general *Matthews v. Eldridge* analysis, in which post-deprivation tort remedies are all the process that is due, simply because they are the only remedies the state could be expected to provide." *Zinermon*, 494 U.S. at 128, 110 S.Ct. at 985. *Parratt* is not an exception to the *Mathews* balancing test, but rather an application of that test to an unusual case. *Id.*

The Court also rejects Defendant's argument that due process is satisfied because the police had probable cause to arrest Plaintiff. Taking Defendant's argument to its logical extreme, no citizen subject to arrest, guilty or innocent, has a right to his or her property until guilt or innocence has been determined. The Court will not reach such an extreme conclusion.

## C.  *Due Process Analysis*

The Fourteenth Amendment guarantees that in all cases where a person stands to be deprived of life, liberty or property by the government, he is entitled to due process of law. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989). Procedural due process questions are examined in two steps: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id.* (citation omitted). Here, Defendant concedes that the seizure of Plaintiff's money implicates a protectible property interest. Therefore, the only issue is what "process" is due to protect against an erroneous deprivation of that interest. *Mackey v. Montrym*, 443 U.S. 1, 10, 99 S.Ct. 2612, 2617, 61

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 8

1  L.Ed.2d 321 (1979).

2      In *Matthews v. Eldridge*, the Supreme Court set forth three

3  factors that normally determine whether an individual has received the

4  "process" that the Constitution finds "due":

5      First, the private interest that will be affected by the
       official action; second, the risk of an erroneous
6      deprivation of such interest through the procedures used,
       and the probable value, if any, of additional or substitute
7      procedural safeguards; and finally, the Government's
       interest, including the function involved and the fiscal and
8      administrative burdens that the additional or substitute
       procedural requirement would entail.
9
   424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).  By
10
   weighing these concerns, courts can determine whether a State has met
11
   the fundamental requirement of due process; "the opportunity to be
12
   heard at a meaningful time and in a meaningful manner."  *Id.* at 333,
13
   96 S.Ct. at 902 (citation omitted).  "Applying this test, the
14
   [Supreme] Court usually has held that the Constitution requires some
15
   type of hearing *before* the State deprives a person of liberty or
16
   property."  *Zinermon*, 494 U.S. at 127, 110 S.Ct. at 984.  "If there
17
   are no extraordinary circumstances, then some type of prior hearing is
18
   required and an analysis of the three factors under *Matthews*
19
   determines the formality and procedural requisites of the hearing."
20
   *Tellevik*, 120 Wash.2d at 82, 838 P.2d at 118 (citing *Matthews*).  If
21
   the risk of erroneous deprivation to a property interest is great
22
   compared to the government's interest, then due process generally will
23
   require a pre-deprivation evidentiary hearing.  *Id.* at 82, 83 P.2d at
24
   118.
25
       In the present case, Plaintiff argues persons are entitled to a
26

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT -
9

pre-deprivation hearing before the Jail can take their personal property to satisfy a booking fee.  Defendant argues Plaintiff is not entitled to a pre-deprivation hearing because the post-deprivation hearing available to Plaintiff satisfies his due process rights. Defendant relies on *Mackey v. Montrym*, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979), arguing it is dispositive of the issue before the Court.

In *Mackey*, the Supreme Court upheld a Massachusetts statute mandating a 90-day suspension of a driver's license for refusing to take a breath-analysis test upon arrest for driving while under the influence.  443 U.S. at 19, 99 S.Ct. at 2621.  Applying the *Mathews* balancing test, the Supreme Court held that the state's "compelling interest in highway safety justifies" the automatic suspension of a driver's license "pending the outcome of the "prompt post-suspension hearing available."  *Id.*  The Supreme Court recognized that individuals have a strong property interest in their driver's license, but concluded the immediate post-suspension hearing before the Registrar of Motor Vehicles to correct any clerical errors and to resolve questions as to whether grounds exist for suspension of the driver's license, was sufficient to satisfy the due process requirement.  *See id.* at 7-8, n. 5, 99 S.Ct. at 2612, n. 5.

Similarly, Defendant argues due process is satisfied by the availability of a post-deprivation hearing.  But neither the Policy nor the statute at issue in this case provide for a prompt post-deprivation hearing.  Instead, Defendant refers to Washington's "comprehensive statutory procedure" whereby citizens may file claims

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 10

against governmental entities to seek the return of personal property.
Defendant did not provide the Court with a citation for this
"comprehensive statutory procedure" or explain how this satisfies due
process.  Nothing before the Court demonstrates that a "prompt"
hearing is required under this comprehensive statutory procedure.

Moreover, even if a prompt post-deprivation hearing was provided
pursuant to the Jail's Policy, Defendant has not shown that this
affords adequate due process.  In *Mackey*, the "prompt post-
deprivation" hearing was sufficient to ensure adequate due process for
the automatic suspension of a driver's license because of the state's
"compelling interest in highway safety."  Here, Defendant has not
shown it has a compelling interest in collecting a booking fee prior
to a determination of guilt.  Contrary to Defendant's position, *Mackey*
is not dispositive of the issue before the Court.  *Mackey*, however,
does illustrate that the issue before the Court is governed by the
*Matthews* balancing test.

While the Defendant concludes that "*Matthews v. Eldridge* supports
Spokane County," it does not provide the Court with any analysis of
the *Matthews* factors.  The State also declined to address the *Matthews*
balancing test.

The first *Matthews* factor requires identification of the nature
and weight of the private interest affected by the action challenged.
*Matthews*, 424 U.S. at 335, 96 S.Ct. at 903.  The private interest at
issue here is a person's interest in the continued possession and use
of his money.  This is certainly a significant interest.

"The duration of any potentially wrongful deprivation of a

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT -
11

property interest is an important factor in assessing the impact of official action on the private interest involved." *Mackey*, 443 U.S. at 12, 99 S.Ct. at 2618 (citation omitted).  RCW 70.48.390 states only that the booking fee must be returned if the person "is not charged, is acquitted, or if all charges are dismissed."  For those persons who are entitled to have their booking fee returned, the statute permits the wrongful deprivation of a person's money for a considerable length of time (i.e. until such time that the person is exonerated).  Although the charges were dropped against Plaintiff one day after he was arrested, Plaintiff's money was not returned for several months.  Under the present Policy, as it was amended in January 2005, Plaintiff and others in his situation would only be deprived of their money for a short period of time because the Policy now requires the automatic return of the booking fee to those persons who are released and not charged within 72 hours.  For persons who are not released within 72 hours, however, the duration of the deprivation is dependent on the time it takes to navigate through the reimbursement process.

Under the second prong of *Matthews*, the Court evaluates the risk of erroneous deprivation at stake, and the probable value, if any, of additional or substantive safeguards.  *Matthews*, 424 U.S. at 335, 96 S.Ct. at 903.  Plaintiff relies on *City of Redmond v. Moore*, 91 p.3d 875, 151 Wash.2d 664 (2004), in which the Washington Supreme Court held that the statute providing for mandatory suspension, without an administrative hearing, of driver's licenses for failure to resolve traffic infractions violated procedural due process.  When reviewing the statute under *Matthews*, the *Redmond* Court focused, in part, on the

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 12

fact that the "possibility exists that error in a conviction record could result in the revocation of the license of an innocent motorist." *City of Redmond*, 151 Wash.2d at 672, 91 P.3d at 879.  Like the statute at issue in *City of Redmond*, Plaintiff argues the Jail's Policy and RCW 70.48.390 subject inmates to unreasonable risks of error.

Under the Policy and the statute the booking fee must be returned to all individuals who are acquitted, found not guilty, or whose charges are dropped.  Thus, those individuals are wrongly deprived of their right to use and possess their money from the time of booking until such time as they are exonerated.  The risk of erroneous deprivation is therefore inevitable in some circumstances.  Further, neither the Policy nor the statute provide a mechanism for determining whether the money taken to satisfy the booking fee is exempt public benefits or is actually the property of a third person.  Moreover, the Policy provides no safeguards guaranteeing the person's money will be returned in the event the person is acquitted or the charges are dropped later than 72 hours after the time of booking.  For those individuals who happen to have money in their possession at the time of booking, the statute and the Jail's Policy place the burden of recovering the money on the incarcerated citizen.

The Court determines that the deprivation of property occurs at the moment the booking fee is separated from the remainder of the individual's personal property.  It is clear there is no hearing or determination of guilt before this deprivation occurs.  Consequently, the risk of erroneous deprivation is great.

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 13

Under the third prong of *Matthews*, the Court must evaluate the State's interest behind the statute, including the function involved, and any fiscal and administrative burdens that additional or substitute procedural requirements would entail. *Matthews*, 424 U.S. at 335, 96 S.Ct. at 903. The parties agree the primary purpose of the booking fee is to raise revenue for the municipality. The interest that must be considered, however, is not the State's general interest in collecting a booking fee, but the specific interest in collecting the booking fee without a determination of guilt and without notifying the individual at the time of booking. *See United States v. James Daniel Good Real Property*, 510 U.S. 43, 56, 114 S.Ct. 492, 502, 126 L.Ed.2d 490 (1993) (discussing third consideration under *Matthews*); *see also Connecticut v. Doehr*, 501 U.S. 1, 15-16, 111 S.Ct. 2105, 2115, 115 L.Ed.2d 1 (1991) (analyzing the extent of the plaintiff's interest in ex parte attachment of property, not the plaintiff's general interest in property attachment). The presence or absence of exigent circumstances is also a critical part of the third *Matthews* factor. *See Doehr*, 501 U.S. at 15-16, 111 S.Ct. at 2115-16.

Defendant has not shown its interest would be burdened by providing notice and hearing before confiscating a person's money to satisfy the booking fee or by waiting for a finding of guilt and assessing the booking fee as a court cost. The Court is unaware of any exigent circumstances that warrant the postponement of notice and hearing until after the booking fee is collected.

**V.    CONCLUSION**

Under *Matthews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, the Court

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 14

concludes the Spokane County Jail's Policy and RCW 70.48.390 are facially unconstitutional in that they deprive persons of their property without due process of law in violation of the Fourteenth Amendment.  Since the statute requires immediate payment of the booking fee from any money then possessed by the person being booked, there exists no set of circumstances in which RCW 70.48.390 and the Jail's Policy can be applied constitutionally.  The statute and the Policy affect a significant private interest and the risk of erroneous deprivation is extreme compared to the municipality's interest in increasing revenue.  In this situation, due process requires a pre-deprivation hearing.  Neither the Policy nor the statute, however, provide notice and a hearing before taking a person's money to satisfy the booking fee.  Accordingly,

**IT IS HEREBY ORDERED:**

1.    Plaintiff's Motion for Partial Summary Judgment (**Ct. Rec. 27**) is **GRANTED.**

2.    Defendant's Motion for Failure to State a Claim; Alternatively for Summary Judgment (**Ct. Rec. 36**) is **DENIED.**

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to enter this Order and furnish copies to counsel.

**DATED** this <u>29th</u> day of August, 2006.

*s/ Fred Van Sickle*
Fred Van Sickle
United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 15