UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

SHAWN HUSS, a single man, and
others similarly situated,

             Plaintiffs,

         v.

SPOKANE COUNTY, a municipal
corporation,

            Defendant.

No. CV-05-180-FVS

ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT AS TO LIABILITY

**THIS MATTER** comes before the Court on the Plaintiff's Motion For
Partial Summary Judgment, Ct. Rec. 27, as addressed in the parties'
supplemental briefing.  The Plaintiff is represented by Breean Beggs.
The Defendant is represented by James Kaufman and Frank Conklin.

**BACKGROUND**

The Plaintiff, Shawn Huss, filed suit individually and on behalf
of a class of others similarly situated, under 42 U.S.C. §§ 1983 and
1988, seeking both monetary damages and declaratory and injunctive
relief.  The Plaintiffs' complaint alleges that the booking fee policy
of the Defendant Spokane County Jail ("the Jail"), as well as the
underlying statute, RCW § 70.48.390, are facially unconstitutional in
that they deprive individuals who are arrested of their property
without due process of law.

In May 1999, the Washington legislature passed RCW § 70.48.390,

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS
TO LIABILITY- 1

authorizing city, county, and regional jails to take a $10.00 booking fee from the person of each individual booked into jail.  In May 2003, the Washington legislature amended RCW § 70.48.390, allowing jails to require each person who is booked into jail to pay a fee based on the jail's actual booking costs or one hundred dollars, whichever is less. The "fee is payable immediately from any money then possessed by the person being booked" into jail.  RCW § 70.48.390.

In accordance with RCW § 70.48.390, on or about February 24, 2004, the Spokane County Board of Commissioners passed Resolution 04-0160, which authorized the Jail to develop and implement a procedure to collect a fee from persons booked into jail.  On May 5, 2004, pursuant to Resolution 04-0160, the Jail adopted an official policy[1] ("the Policy") authorizing the collection of a booking fee.  Under the Policy, federal inmates are charged the federal daily rate while non-federal inmates are charged the actual jail booking costs--$89.12. Pursuant to the statute, the Policy allows the fees to be taken directly from any funds in the person's possession at the time of booking.  If the person does not have adequate funds to cover the booking fee, a charge is assessed to the person's account.  The Policy does not provide a mechanism for determining whether the money taken from the person is exempt public benefits or the property of a third person.  The Policy does not provide for a pre-deprivation hearing or any other opportunity for persons to contest the taking of their money.

---

[1] Policy 2.00.00 Booking

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY- 2

Instead, the Jail adopted a separate reimbursement policy.  Under this reimbursement policy, the individual is required to prove the charges against him or her were dropped or that he or she was acquitted, and then, upon investigation by the Spokane County Jail Staff, the inmate may[2] be reimbursed for the intake fee.

In the present case, Mr. Huss was arrested based on a domestic violence complaint and booked into the Spokane County Jail on October 31, 2004.  Mr. Huss' wallet was inventoried as personal property that would be returned upon his release, but the Jail took all of the money from Mr. Huss' wallet ($39.30) as payment on the booking fee ($89.12). The Jail did not inform Mr. Huss he was being charged a booking fee, that there was a reimbursement policy in place, or that the money was required to be returned if his charges were dropped or he was acquitted.  Mr. Huss was released from jail the next day after all of the charges were dropped.  Upon his release, his money was not returned and he did not receive a copy of the Jail's reimbursement policy.  The Jail eventually returned Mr. Huss' money on February 23, 2005, approximately four months after the charges against him were dropped, and after Mr. Huss' lawyer sent a letter to Spokane County stating that the Jail's booking fee policy was unconstitutional.

In January 2005, the Jail modified its forms and procedures related to the collection of booking fees.  It is now a requirement

---

[2] The "Spokane County Jail Claim Form For Reimbursement of Intake Fees" specifically states that the Jail Staff will investigate all claims and the decision to honor the claim is based on that investigation.

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY- 3

that each person booked into jail receive paperwork outlining methods for obtaining reimbursement.  Further, persons who are released and not charged within 72 hours, automatically, without request, have their booking fees returned if paid in part or in full.  The Jail also automatically voids any *unpaid* booking fee for all inmates who are found not-guilty, acquitted, or have their charge dismissed.

On August 29, 2006, the Court granted the Plaintiff's motion for partial summary judgment, holding that RCW § 70.48.390 and the booking fees premised upon it are facially unconstitutional.  The Defendant, as well as the Intervenor, State of Washington, moved for reconsideration on the basis of a number of issues, including standing and mootness.  The Court found that the Plaintiff does not have standing to seek declaratory or injunctive relief, granted the Defendant's motion for reconsideration, and withdrew its prior order. The Court directed the parties to submit supplemental briefing addressing the question: "Is partial summary judgment appropriate on any element of the Plaintiff's suit for damages under [42 U.S.C.] § 1983?"  Order Granting Motion For Reconsideration, Ct. Rec. 117, ¶ 6.

The parties' supplemental briefing is now before the Court. While the parties have taken the opportunity to address the issue of damages, the Plaintiffs' underlying Motion For Partial Summary Judgment, Ct. Rec. 27, seeks a ruling only on the issue of liability. A ruling on the issue of damages would be premature at this stage of the litigation.  The present order, therefore, is limited to the sole issue of whether the Defendant is liable to the lead Plaintiff, Mr. Huss, and other similarly situated individuals under Section 1983.

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY- 4

**DISCUSSION**

In the Ninth Circuit, a plaintiff must prove two elements to state a cause of action under Section 1983: "1) that the Defendants acted under color of state law; and 2) that the Defendants caused them to be deprived of a right secured by the Constitution and laws of the United States." *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997). *See also Anderson v.* Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

A person acts under color of state law if he or she is a public official and takes the offending action in relation to the powers of his or her public position. *Johnson*, 113 F.3d at 117. In this case, it is undisputed that the Defendant was acting and continues to act under state law in assessing its booking fee. The sole issue to be determined concerning Section 1983 liability is therefore whether the Defendants caused the Plaintiff and those similarly situated to be deprived of a right secured by the Constitution.

The Plaintiff alleges that the Defendant's assessment of the booking fee deprived him of procedural due process of law. Procedural due process questions are examined in two steps. First, the Court must determine "whether there exists a liberty or property interest which has been interfered with by the State." Second, the Court must determine "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1909, 104 L. Ed. 2d 506, 514 (1989)(internal citations omitted).

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY- 5

**A.    Protected Property Interest**

The Defendant concedes that the seizure of the Plaintiff's money implicates a protectible property interest.  Therefore, the only issue is what "process" is due to protect against an erroneous deprivation of that interest.  *Mackey v. Montrym*, 443 U.S. 1, 10, 99 S.Ct. 2612, 2617, 61 L. Ed. 2d 321, 329 (1979).

**B.    Constitutional Sufficiency of Attendant Procedures**

In *Matthews v. Eldridge*, the Supreme Court set forth three factors that normally determine whether an individual has received the "process" that is "due" under the Constitution:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976).  By weighing these concerns, courts can determine whether a State has provided "the opportunity to be heard at a meaningful time and in a meaningful manner," which is the fundamental requirement of due process.  *Id*. at 333, 96 S.Ct. at 902, 47 L. Ed. 2d at 32 (citation omitted).  "Applying this test, the [Supreme] Court usually has held that the Constitution requires some kind of hearing before the State deprives a person of liberty or property."  *Zinermon v. Burch*, 494 U.S. 113, 127, 110 S. Ct. 975, 984, 108 L. Ed. 2d 100, 114-115 (1990).  "If there are no extraordinary circumstances, then some type of prior hearing is required and an analysis of the three factors under

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY- 6

Matthews determines the formality and procedural requisites of the hearing." *Tellevik v. 31641 E. Rutherford St.*, 120 Wash.2d 68, 82, 838 P.2d 111, 118 (citing Matthews).

### 1.    Private interest

The first *Matthews* factor requires identification of the nature and weight of the private interest affected by the challenged action. *Matthews*, 424 U.S. at 335, 96 S.Ct. at 903, 41 L. Ed. 2d.  "The duration of any potentially wrongful deprivation of a property interest is an important factor in assessing the impact of official action on the private interest involved." *Mackey*, 443 U.S. at 12, 99 S.Ct. at 2618, 61 L. Ed. 2d at 331 (citation omitted).

The Defendant argues that the Plaintiff's interest in the temporary use of his $39.00 is "de minimus" because this "pocket change" would not accrue interest while the Plaintiff had it in his possession.  This argument misconstrues the nature of the right at stake.  The right to possess and retain one's property is a fundamental right, regardless of the property's value or its capacity to generate interest.  An individual who has $40 in his or her possession can purchase a meal, a bus ticket, or a jacket.  An abstract right to receive $40 sometime in the future is small comfort to someone with a present need to eat, travel, or remain warm.

The Defendant further argues that the deprivation of property at issue in this case is "fleeting" because all criminal defendants are entitled to a speedy trial and any delay in resolving a criminal case will be at the defendant's own request.  However, an individual's decision to waive his or her right to a speedy trial should not

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY- 7

obligate that individual to forego procedural due process.  Moreover, for those persons who are entitled to the return of their booking fee, the statute permits the wrongful deprivation of a person's money for a considerable length of time (i.e. until such time as the person is exonerated).  Although the charges against the Plaintiff were dropped one day after his arrest, his money was not returned for several months.  Under the present Policy, as amended in January 2005, booking fees are automatically returned to those persons who are released and not charged within 72 hours.  Individuals released within 72 hours are thus only deprived of their property for a short period of time.  However, for those persons who are not released within 72 hours, the duration of the deprivation is dependent on the time it takes to navigate through the reimbursement process.

For the reasons stated above, the Court holds that the Plaintiff's interest in the continued use and possession of his money is a significant interest entitled to considerable weight.

### 2.    Risk of Erroneous Deprivation

Under the second prong of *Matthews*, the Court evaluates the risk of erroneous deprivation of the interest at stake and the probable value, if any, of additional or substantive safeguards.  *Matthews*, 424 U.S. at 335, 96 S.Ct. at 903, 41 L. Ed. 2d.

Under the Defendant's booking fee policy, everyone who is arrested is deprived, at least temporarily, of the use of their property.  Those individuals who are eventually acquitted or whose charges are dropped are entitled to the return of their booking fees.  These individuals are wrongly deprived of the use of their right to

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY- 8

1   use and possess their money from the time of booking until such time

2   as the fee is returned.  A certain number of individuals who are

3   arrested will eventually be exonerated through one path or another.

4   For these individuals, erroneous deprivation is not a risk; it is a

5   certainty.

6       The Defendant argues that due process does not require notice and

7   a hearing prior to the assessment of a booking fee because the

8   post-deprivation hearing available to the Plaintiff satisfies his due

9   process rights.  The Defendant relies on *Mackey v. Montrym*, arguing it

10  is dispositive of the issue before the Court.

11      In *Mackey*, the Supreme Court upheld a Massachusetts statute

12  mandating a 90-day suspension of a driver's license for refusing to

13  take a breath-analysis test upon arrest for driving while under the

14  influence.  443 U.S. at 19, 99 S.Ct. at 2621, 61 L. Ed. 2d at 335.

15  Applying the Mathews balancing test, the Supreme Court held that the

16  state's "compelling interest in highway safety justifies" the

17  automatic suspension of a driver's license "pending the outcome of the

18  prompt post-suspension hearing available."  *Id.*  The Supreme Court

19  recognized that individuals have a strong property interest in their

20  driver's license, but concluded the immediate post-suspension hearing

21  before the Registrar of Motor Vehicles to correct any clerical errors

22  and to resolve questions as to whether grounds exist for suspension of

23  the driver's license, was sufficient to satisfy the due process

24  requirement.  *Id.* at 7-8, n. 5, 99 S.Ct. at 2616, n. 5, 61 L. Ed. at

25  327.

26      *Mackey* is distinguishable from the present case, however, because

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS
TO LIABILITY- 9

the Jail's Policy does not provide for a prompt post-deprivation hearing.  Instead, the Defendant refers to Washington's "comprehensive statutory procedure" whereby citizens may file claims against governmental entities to seek the return of personal property.  The Defendant did not provide the Court with a citation for this "comprehensive statutory procedure" or explain how this satisfies due process.  Nothing before the Court demonstrates that a "prompt" hearing is required under this comprehensive statutory procedure.

Even if the Jail's policy did provide for a prompt, post-deprivation hearing, the Defendant has not shown that such a hearing would afford adequate due process.  In *Mackey,* the "prompt post-deprivation" hearing was sufficient to ensure adequate due process for the automatic suspension of a driver's license because of the state's "compelling interest in highway safety."  Here, the Defendant has not shown that it has a compelling interest in the immediate collection of booking fees.

Thus, the Court holds that the risk of erroneous deprivation is great and this factor weighs in favor of the Plaintiff.

### 3.   Government's interest

Under the third prong of *Matthews*, the Court must evaluate the Defendant's interest underlying application of the Policy, including the function involved, and any fiscal and administrative burdens that additional or substitute procedural requirements would entail. *Matthews*, 424 U.S. at 335, 96 S.Ct. at 903, 41 L. Ed. 2d. at 502.  The interest that must be considered, however, is not the Defendant's general interest in collecting a booking fee, but the specific

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY- 10

interest in collecting the booking fee without a determination of guilt and without notifying the individual at the time of booking. *See United States v. James Daniel Good Real Property*, 510 U.S. 43, 56, 114 S.Ct. 492, 502, 126 L.Ed.2d 490 (1993) (discussing third consideration under *Matthews*); *see also Connecticut v. Doehr*, 501 U.S. 1, 15-16, 111 S. Ct. 2105, 2115, 115 L. Ed. 2d 1, 16-17 (1991) (analyzing the extent of the plaintiff's interest in ex parte attachment of property, not the plaintiff's general interest in property attachment).

The parties agree the primary purpose of the booking fee is to raise revenue for the municipality.  The Defendant has stated that waiting to assess a booking fee until sentencing would impose a hardship on the County.  According to the Defendant, it may be unable to recover booking fees from criminal defendants if these fees are not assessed until sentencing.  This assertion is supported by neither evidence nor analysis.  Consequently, it is insufficient to raise a genuine issue of material fact concerning the burden additional safeguards would place on the government.  In the absence of such a burden, it is clear that the first two *Matthews* factors outweigh the Defendant's interest in assessing a booking fee at the time of booking.

**C.    Supplemental Authority**

The Defendant has brought a recent decision of the Sixth Circuit to the Court's attention.  In *Sickles v. Campbell County*, the Sixth Circuit held that procedural due process does not bar a municipal jail from seizing the money in a person's possession at the time of his or

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY- 11

her arrest and applying a portion of it to the cost of booking and arraignment without a pre-deprivation hearing.  No. 06-6055, 2007 U.S. App. LEXIS 21163, *1-2 (Sept. 5, 2007).  The Court, however, declines to follow *Sickles* because the Sixth Circuit's analysis of the first *Matthews* prong is unpersuasive and its analysis of the second prong is distinguishable.

In applying the first *Matthews* factor, the Sixth Circuit assumed that only private interests that rise to the level of "the historic right to maintain control over one's home" or government benefits that constitute "the very means by which [people] live" deserve a pre-deprivation hearing.  However, the right to a pre-deprivation hearing is the rule, rather than the exception.  *Tellevik*, 120 Wash.2d at 82, 838 P.2d at 118.

The Sixth Circuit also found that the private interests at stake were "small in absolute and relative terms, totaling $20 in [one inmate's case] and $110.27 in [another]."  *Id.* at *7.  This analysis risks overlooking economic realities.  Taking the facts of the present case, $39.00 may be what the Defendant has termed "pocket change" to one individual may mean a good deal to another.  The import of a given amount is relative to one's overall economic circumstances.

Moreover, *Sickles* is distinguishable from the present case in two key respects.  First, the Defendant's Policy in the present case provides that individuals who are eventually exonerated are entitled to recover their booking fee.  The Plaintiff is one such individual who was deprived of his property, exonerated, and then left to wait for the return of his money.  In contrast, it does not appear that the

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY- 12

underlying law in *Sickles* entitled any inmate to the return of his or her funds.

Second, even if the law in *Sickles* had contained such a provision, neither of the *Sickles* plaintiffs had been exonerated. Based on this fact, the Sixth Circuit declined to consider the effect of the jails' policies on "those arrested, booked and immediately released because of mistake." *Id.* at 14.  Thus the only possibility of erroneous deprivation before the *Sickles* court was the possibility that the jails would withhold the wrong amount of money.  *Id.* at *8.

**CONCLUSION**

Under *Matthews v. Eldridge*, the Court holds that the application of Spokane County Jail's booking fee policy to the Plaintiff and other similarly situated individuals deprived them of due process of law. Seizure of all of the funds in the Plaintiffs' possession implicated a significant private interest.  When the Jail applies its Policy to individuals like the Plaintiff, the risk of erroneous deprivation is extreme compared to the municipality's interest in increasing revenue. In this situation, due process requires a pre-deprivation hearing. Accordingly,

**IT IS HEREBY ORDERED:**

1. The Plaintiff's Motion For Partial Summary Judgment, **Ct. Rec. 27**, is **GRANTED.**

2. The Defendant's Motion to Strike Plaintiff's Motion for Class Certification, **Ct. Rec. 102**, is **DENIED.**

3. The Defendant shall submit its response to the Plaintiff's Motion for Class Certification within 20 days of the entry of this

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY- 13

1  order.

2      4. The Plaintiffs shall submit their reply within 20 days of the

3  filing of the Defendant's response.

4      **IT IS SO ORDERED.**  The District Court Executive is hereby

5  directed to enter this order and furnish copies to counsel.

6      **DATED** this  12th  day of October, 2007.

7

8                          s/ Fred Van Sickle
                          Fred Van Sickle
9                   United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26